# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| VINCENT PINDER, | ) | 3:13-cv-00572-MMD-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | **re Doc. # 38** |
| RENEE BAKER, et al., | ) | |
| Defendants. | ) | |

Before the court is Plaintiff's Motion to Compel the Disclosure of Privileged Documents. (Doc. # 38.)[1] The Defendants have opposed the motion. (Doc. # 41.) Plaintiff has replied. (Doc. # 46.)

Plaintiff's motion pertains to the Request for Production of Documents which he served on the Defendants in August of 2014. Generally, Plaintiff complains the Defendants refused to disclose and produce certain documents based on state law privileges. Plaintiff also references in his motion a First Set of Interrogatories which he received from counsel for the Defendants on November 7, 2014, about which he vaguely complains. (Doc.# 38 at 2.)[2] Unfortunately, Plaintiff did not attach the disputed discovery to his motion, as is required by Local Rule 26-7(a). What Plaintiff did include in his motion was a list of 12 requests for production under a heading section entitled "Requested Documents Sought to be Compelled." (*Id,* at 4-5.)

Defendants's opposition, however, attached Plaintiff's first request for production of documents

---

[1] Refers to court's docket number.

[2] Apparently the document to which Plaintiff objects in general is the Defendants' responses to his first set of interrogatories. However, the court does not view Plaintiff's motion to compel as encompassing the interrogatories, just the request for production.

as Exhibit A and the Defendants' responses as Exhibit B. (Docs. ## 42, 42-1, 42-2.) Defendants further note that the requests summarized in Plaintiff's motion do not match Plaintiff's original request for production and in fact, constitute new requests which were contained in Plaintiff's second request for production to Defendants. (Doc. # 42 at 2.) Plaintiff's first request for production sought 7 categories of documents (Doc. #42-1), while the list Plaintiff has included in his motion contains 12 requests (Doc. # 38 at 4-5). Plaintiff's reply addresses this contradiction, stating he "accidently submitted" the items sought in his second request for production which he served in December. (Doc. # 46 at 1.) "In error, the Plaintiff [referring to himself] submitted his Second Set of Production Documents...instead of [illegible] the original Documents from the Plaintiff First Request." (*Id.*, at 2.)

Although the Plaintiff did not attach the disputed discovery responses pertaining to his first request for production, and instead only discussed his second requests for production (Doc. # 38 at 4-5), as noted above, the Defendants provided their responses to Plaintiff's first request for production. Defendants also addressed the productions of documents they have made and discussed the substance of their objections and privilege/confidentiality assertions lodged with respect to Plaintiff's requests. As noted above, while Plaintiff in his reply acknowledges his mistake regarding his first and second requests for production, he provides no substantive comments other than generally objecting to the Defendants' assertion of privilege. Plaintiff states he "requires physical copies of the above stated documents to research study, prepare for further litigation." In conclusion, Plaintiff states:

> Defendants have complied with Plaintiff's (First) Request for Production of Documents, and the Plaintiff has corrected his error in the motion herein and ask that this Honorable Court to compel and order the Defendants to produce the Plaintiff with (all) physical copies of the documents Plaintiff requested in his First Request for Production that was denied to him by the Defendants, as privileged, classified and confidential which where submitted to the Warden's Office, only for review. (sic)

(Doc., # 46 at 2-3.)

Nevertheless, the court, albeit without the benefit of Plaintiff's specific objections to the discovery responses, will resolve the parties' issues which appear to remain as to this discovery dispute.

**I. RELEVANCE AND PRIVILEGE**

   **A. RELEVANCE**

The first limitation on permissible discovery is that it be relevant. *See, e.g., Dowell v. W.T.*

2

*Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. Aug. 17, 2011) (stating that the court must address whether the requested documents are relevant before engaging in the privilege analysis). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppehnheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 1978 (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

**B. PRIVILEGE**

The second limitation on discovery is that the matter sought be nonprivileged. In a federal question case, such as this one brought pursuant to 42 U.S.C. § 1983, privilege is determined by federal common law. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Breed v. United States Dist. Ct. for Northern Dist.*, 542 F.2d 1114, 1115 (9th Cir. 1976) (action brought under 42 U.S.C. § 1983).

Federal law governing privilege has not been codified; instead, "[t]he common law - as interpreted by United States courts in the light of reason and experience - governs any claim of privilege" unless otherwise provided by "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.

"In a civil rights case brought under federal statutes questions of privilege are resolved by federal law." *Kerr v. U.S. Dist. Ct. for the No. Dist. of CA*, 511 F.2d 192, 197; Fed. R. Evid. 501. As the United States District Court for the Northern District of California pointed out:

> It…would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). This does not mean that courts can just ignore state privilege doctrine. See id. ("federal courts generally should give some weight to privacy rights that are protected by state constitutions and state statutes"); *see also Boar, Inc. v. County of Nye*, 2:08-cv-01091-PMP-RJJ, 2010 WL 5070888, at * 2 (D. Nev. Oct. 15, 2010).

The Defendants' arguments predicated upon "confidentiality" asserted upon state law (e.g.,

3

1  Nevada Revised Statutes, Nevada Administrative Code, Nevada Department of Corrections (NDOC)
2  Administrative Regulations, etc.) would perhaps best be associated with what is recognized by the
3  federal courts as a "qualified privilege for official information." *See, Kerr*, 511 F.2d at 198. Personnel
4  files and complaints made against government employees have been considered "official information."
5  *Id.*; *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citation omitted). When
6  a party asserts this privilege, courts must engage in a balancing analysis to determine whether the
7  potential benefits of disclosure outweigh the potential disadvantages. *Id.*; *see also Sanchez*, 936 F.2d at
8  1033 (citation omitted); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly*, 114 F.R.D.
9  at 656.

10  As stated above, while the State regulations invoked by Defendants do not govern the assertion
11  of privilege in a federal question case such as this one, the court is mindful of the State's interest in
12  protecting private personnel or otherwise confidential information. To the extent Defendants rely on
13  NDOC Administrative Regulations (AR) 568 (Inmate Review of Departmental Records) and 569
14  (Confidentiality of Inmate Records) as a basis for refusing to produce documents (as well as ARs 740,
15  560, 568 and 569), the court is also cognizant of NDOC's concerns for the safety and security of its
16  inmates, employees and the public. The court takes these interests into account in balancing the benefits
17  versus the potential harms that would result from disclosure of this information insofar as it has
18  construed Defendants' objection as asserting the official information privilege.

19  Nevertheless, while the court may give some weight to the State confidentiality interests
20  contained in ARs 308, 568, 569 and NAC 284.718, they do not control the determination of the
21  applicability of privilege in this case as Defendants have argued. The "balancing test" enunciated by
22  *Kelly* (and followed by this district in *Carrillo v. Las Vegas Met. Police Dept.*, No. 2:10-cv-02122-KJD-
23  GWS, 2013 WL 592893 (D. Nev. Feb. 14, 2013) and followed in part in *Manley v. Zimmer, et al.,*
24  No: 3:11-CV-00636-RCJ-WGC 2013 WL 5592328 (D. Nev. Oct. 9, 2013)) requires a state defendant
25  asserting confidentiality or privilege to follow a certain protocol. 114 F.R.D. at 661. While Defendants
26  have not necessarily adhered to either the *Kelly* protocol, or the abbreviated or modified version thereof
27  adopted in *Manley* relative to inmate conditions of confinement cases (2013 WL 5592328 at * 10-11),
28  because Plaintiff failed to properly present the discovery dispute in his motion, the court nonetheless

4

addresses this discovery dispute at issue in the general context of the official information privilege.

**II. DISCUSSION**

    **A. Defendants' Relevancy Objections**

As to all of the Plaintiff's requests, the court is troubled by Plaintiff's requests for information well beyond the scope of this case. For example, Plaintiff's requests for "civil and criminal law suite(sic), small claims and employee misconduct reports against Mullins in reference to: retaliation, unreasonable search and seizure harassment, threat against Plaintiff inmates and/or staff and/or caseworker(s)," found in Request #1 as to Mullins (and in requests ## 2-5 as to the other defendants) are overbroad and would be burdensome to the Defendants to produce. However, and more importantly, Plaintiff's identified requests do not pass the threshold requirement of relevancy grounds. Complaints of misconduct in other cases would not be probative as to whether the Defendants in this case committed the acts and omissions attributed to them. Defendants' objections to such information in Requests 1-5 are **sustained.**

The court will now turn to the specific requests and Defendants' other objections on privilege, confidentiality and/or security sensitive information.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:[3]

Produce any and all copies of: grievances i.e. 2006-29-58027; 2006-29-58448; 2006-29-59350; 2006-29-59752 and any others that Plaintiff filed against Defendant Brian Mullins, form 2012-2014. Inspector General Investigator report, any and all, incident reported from 5-25-2014, civil an criminal law suits, small claims and employee misconduct reports against Mullins in reference to: retaliation, unreasonable search and seizure harassment, threats against Plaintiff, Inmates, and/or staff/co-worker(s).

Defendants state they have produced the "requested grievances, the Inspector General's Investigation Report and the Unusual Occurrence Report from May 25, 2013." Defendants further state that because of the sensitive information in the Inspector General's Report, Plaintiff was to submit a kite to the warden's. (Doc. # 41 at 3.)

Without any further rebuttal information from Plaintiff, the court finds the response acceptable.

---

[3] Defendants' specific responses to the requests for production are found in Doc. # 41 at 3-9 and Doc. # 41-2.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:

Produce any and all copies of : grievances i.e. 2009-29-59411; 2006-29-62541; 2006-29-63650; and any other's that Plaintiff had filed against Defendant April Witter, from 2011-2014, Inspector General investigation reports of grievances, any and all copies of civil and criminal lawsuits, small claims., investigation reports, Ely administration investigation report, and employee misconduct reports against Witter, in reference to retaliation., harassment, loss or damages personal property/mail against Plaintiff, Inmates and/or staff/co-worker(s).

Defendants state that /grievances 2009-26-59411 and 2006-29-62541 have been produced. (Doc. # 41 at 4.) Because grievance 2006-29-636501 "was generated by an NDOC inmate other than plaintiff," it was not produced. (*Id.,* at n. 1.)

Defendants' response to request No. 2 are satisfactory to the court.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:

Produce any and all copies of grievances i.e. 2006-29-41628; 2006-29-41629; 2006-29-44130; 2006-29-42877 and any other's that Plaintiff filed against Defendant(s) Terrance Deeds, Ronnie Montoya and Curtis Rigney, from 2011-2014. Any and all copies of civil and criminal law suits; small claims; Inspector General investigation reports in grievances, Ely prison administration investigation, incident report from 5-25-2013; and employee misconduct reports against Deeds, Montoya, and Rigney, in reference to : excessive force, threats, harassment, retaliation, cruel and unusual punishment, assault, battery, unreasonable search and seizure against Plaintiff, Inmates and/or staff/co-workers.

Defendants state grievance ## 2006-29-41625, 2006-29-41629 and 2006-29-42877 have been produced. Although Plaintiff also requested production of grievance 2006-29-44130, Defendants instead produced 2006-29-44150. (Doc. # 41 at 5-6.) The court assumes that this grievance was misnumbered by one of the parties but that regardless, it was produced.  The unusual occurrence report was made available to Plaintiff by kiting the Warden's Office.

Defendants' responses to request No. 3 are satisfactory to the court.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:

Produce any and all copies of: full classification report done on or around 1-7-13, by caseworker William Moore and AWP Byrne. Plaintiff custody status on 1-7-13, i.e. points, OMD transfer report and

6

transcripts for Plaintiff's transfer submitted by Moore on or around 1-7-13, Moore's grievance investigation into Plaintiff claims from 2012-2014, against Defendants Mullins and Witter, any and all copies of civil and criminal lawsuits; small claims; incident reports, Inspector General reports, Ely prison administrative investigation and employee misconduct reports against Moore, in reference to : retaliation, threats, harassment, falsify documents, false imprisonment against Plaintiff, Inmates and/or staff/co-workers.

In this request, the defendants are asked to produce Plaintiff's 1/7/13 classification report. Defendants produced case notes (redacted) for a broader range or time period. (Doc. #41 at 6-7.) The Plaintiff proffered no objection to the classification materials Defendants provided.

The court is satisfied with the response.[4]

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:

Produce any and all copies of: incident reports done by Sandoval on or about 5-23-13, at Warden's Renee Baker request, incident and investigation report in reference to 5-23-13 cell extraction, grievance investigation report against et al. Defendants in this complaint from 2011-2014, (see #1, #2 and #3 grievances log numbers). Letters from Plaintiff's mother, Elaine White and Baker's responses, any and all civil and criminal lawsuits; small claims; incident reports, Inspector General reports, Ely prison administrative investigation, incident reports and employee misconduct against Renee Baker, in reference to: retaliation, threats, harassment, false imprisonment against Plaintiff, Inmates and/or staff/co-worker(s).

Defendants state the Inspector General's report NDOC 0050-0109 was made available to Plaintiff by kiting the warden office. In light of the possible security concerns presented by such productions, the court finds the response satisfactory.

A component of Plaintiff's request was to obtain copies of correspondence between Plaintiff's mother Elaine White and Warden Baker. Defendants objected on relevancy grounds. (Doc. # 41 at 8.) Plaintiff did not address the relevancy of such communications. While it is possible the correspondence in some fashion might possibly pertain to Plaintiff's claims against Warden Baker, because of Plaintiff's

---

[4] For security reasons, Plaintiff was required to kite the Warden's Office to review the case notes marked as NDOC 0183-0183

1 failure to argue the relevancy of such communications, the court finds the relevance of Ms. White's
2 correspondence to the Plaintiff's action is tenuous at best. The Defendants' responses to this request are
3 satisfactory.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:

Produce any and all other copies, documents, records, reports, statements and video tape recordings from May 25, 2013, i.e. cell extraction at Ely State Prison, of Plaintiff in Unit 8, Cell 36, Officers Incident reports and statements, transport to hospital report ad approval, medical reports and statements, transfer to NNCC for treatment and return report and approval, list of name(s) of all CERT team officers that took part in cell extraction of Plaintiff, there (CERT) positions, instructions, duties, responsibilities, duties and training skills, employee CERT team policies, instructions, Operational Procedures, Administrative Rules and regulations, Employee Code of Ethics and Conduct.

The Defendants state records regarding cell extraction policies and materials have been produced. The cell extraction videos and Plaintiff's medical records are made available to Plaintiff upon kiting the Warden's office. (Doc. # 41 at 8-9.)

Defendants' responses to request No. 6 are satisfactory to the court.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:

Plaintiff also request that Defendants and/or the Attorney for the Defendants Catherine Cortez Masto, Attorney General; Benjamin R. Johnson, Deputy Attorney General, send copies of (all) requested documents to Plaintiff at Ely State Prison. Plaintiff also request that Defendant or Defendant Attorney send a list of all the documents, pictures, incident reports, records, grievances, statements and transcripts that are being sent to Plaintiff by Defendants and their attorneys and/or schedule a reasonable state and time for Plaintiff to inspect video of cell extraction and medical records, and other documents requested by the Plaintiff to figure out which items are beneficial to him.

This request and Defendants' response (Doc. # 41 at 7) may be the gravamen of Plaintiff's complaints which remain at issue, i.e., that he wants production of the actual documents in his cell. (Doc. # 46 at 2-3.) Although Defendants have not strictly complied with the *Kelly - Manley* protocols demonstrating the actual security concerns of the identified documents, the court is sufficiently apprised of their general content to validate the requirement these documents not be produced to Plaintiff in his

Case 3:13-cv-00572-MMD-WGC   Document 52   Filed 02/10/15   Page 9 of 9

cell, but instead, Plaintiff must kite to review them at the Warden's Office.

Defendants' response to Request No. 7 is satisfactory to the court.

## CONCLUSION

Plaintiff's motion (Doc. # 38) is **DENIED** consistent with this Order.

**IT IS SO ORDERED.**

DATED: February 10, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

9